Please call the next case. Case number 1441-36, Nancy Marouf et al. v. Loretta Lynch. Oral argument not to exceed 15 minutes per side. Mr. Barhoun for the appellate. Good morning, your honors. May it please the court. Ann Barhoun for the petitioners Nancy Marouf, Saeed Marouf, and Nahida Marouf. I would like to reserve two minutes for rebuttal. You may. Please proceed. Would you like me to address the questions that this court submitted to us first before I begin mine? We can ask you the questions. Go ahead. The original problem in the case is asylum. Correct. And so why don't you address that first and then we'll ask you about these other procedural problems, so to speak. All right. Thank you. The adverse credibility determination made by the Immigration Court and later upheld by the Board of Immigration Appeals was based on substantial evidence, was not based on substantial evidence. We are asking that the adverse credibility determination be reversed and the case remanded for further fact finding. Two major errors contaminated the Immigration Court's adverse credibility determination. First, great weight was placed on a letter from Saeed Marouf's mother about her son's surgery and how his nose was broken. The letter was poorly translated and did not reflect properly on what the mother had said. Second, and much more importantly, the petition... Do you have some support for the idea that it was mistranslated? I do, Your Honor, but it was not part of the record. In preparing for the oral arguments, I saw the letter and I immediately recognized that it was mistranslated. Just out of curiosity, because we get these claims that there's translation problems quite a bit, who actually provides the translated version of something? Is that the petitioner? The petitioner. I was not part of the case early on, so I do apologize. So we have a letter in Arabic that's being submitted to support a case. Correct. And the party providing it provides the translation. The original trial attorney... And then when the ALJ or IJ in this case attaches, you say, an improper significance of that, then you say, oh, wait a minute, the translation I provided is not accurate. Is that right? I understand what you're saying. And in this case it's not followed up with anything other than an assertion. It's not followed up with anything that tells us or shows us what the error was. Right? Yeah. So what are we to do with that? Well, my second point, and I think this is, I mean, I realize that it's not part of the record. But I want to go on and point out that great... Sorry. This is on the nose problem. Correct. Was there a request to reopen the record to clear up the translation problems and have the IJ look at it again? No, there was not. No, there was not, Your Honor. I just was put on this case in the last two weeks. So it was... Did your senior partner, I've forgotten his name, but did he handle this case for... Mr. Shamia. But he didn't write the appellate brief. He had another attorney in the office who did not read and write. This is a problem of ineffective assistance of counsel in part. Well, I think it really starts with the trial attorney being ineffective in his translation to begin with. And is that somebody in your office or another? No, it's another office. It's a person in Michigan. And did that lawyer speak Arabic? No, he did not. So how would he know it was a bad translation? From what I read from the transcript, he evidently had a woman working in his office who did all the translation. Did all the translation for the application. The clients do not speak English well at all. The petitioners do not speak English well at all. So I think... Where are they now? Where are they now? They're in Minnesota. Have you ever met them? I have not met them. No. So you don't know whether they speak English well or not, do you? No, I know for a fact that they don't speak English well because I didn't speak to them myself on the phone, but people in my office did. And Mr. Shamia met with them. So I know they don't speak English particularly well. But I think what was... So if it's hard for us to get our arms around this translation error from the mother's letter, then you said, but I really have a more important point I want to make, and we cut you off. What's that more important point? The more important point, Your Honor, is that the petitioners were never given the opportunity to explain why the letter said accident and not beating. So what happened at the hearing that prevented them from being able to do that? The judge never asked. In fact, it is... But they had a lawyer there. They had a lawyer, but the lawyer submitted the letter at the time. I believe it was after the February 29, 2012 hearing. And then the judge met with them again on October 23, 2012. And during that entire questioning, the judge never asked them about the discrepancy, the alleged discrepancy in that letter where Nancy, or Saeed Maroof's mother, said that Saeed Maroof broke his nose due to an accident. And the testimony was that it wasn't due to an accident, it was due to this fight. Exactly. But the judge didn't believe anything. I mean, the judge, he didn't believe that the incident even happened. Which I find a little surprising from the testimony that I heard. I mean, they consistently said, both Nancy Maroof and Saeed Maroof, that his nose was broken due to a beating in February. They got the date the year wrong, but they got the months correct. Here's what I don't understand about your argument. The testimony came in that there was a beating. And a document is provided where the translated version says it wasn't a beating, it was an accident. It didn't exactly say that. But it said it was an accident. Now, there's no mystery about that. Nobody was concealing something. The law judge didn't spring this on anybody. At the end of the case, the lawyer for your client had the opportunity to clarify what that, you say, mistake was in the letter during the hearing. Did he not? He did not. The lawyer did not. We know he didn't. The question is, did he have the opportunity to? You seem to be suggesting that this law judge prohibited your client from explaining things. And I understand the claim that the law judge himself did not ask questions. But the law judge didn't prohibit the lawyer from clearing things up, did he? No. That's true. That's absolutely true. But the judge did point out certain discrepancies in other documents and, you know, gave the petitioners the opportunity to explain. In what form exactly did the proof come in, in this case, that there was a beating and he broke his nose? This was in what form? Written form of the complaint by the wife? It was in the testimony. It was in the testimony of Mr. Maroof. He said that he was beaten and his nose broken, and Nancy Maroof, his wife, said that. Corroborated that. Yes. So it's in the record in fairly clear form that that's what they maintain. Yes. The only problem is there is a letter. The only problem that might undermine that is what the immigration judge found. There is a letter that said it was an accident, and there was a discrepancy in the year. Correct. And so what happened was instead of accepting the testimony of the two people here, the administrative law judge, the immigration judge, rejected that in favor of a discrepancy created by the letter. Correct. Okay. Well, let's assume for a second that the only basis for an adverse credibility finding was what you claim is this translation error in the letter. It seems to me that would be one situation. But here the law judge pointed to a combination of things that led him to conclude correctly or incorrectly that these people weren't credible. So it's the letter. It's the date problem. It's the number of people that were participating in the beating. And it seemed to me there might be one other thing. I think on the medical report he mentioned. Yeah, somebody's shoulder versus arm versus hand. That was the cousins, yeah. In Arabic, the word for arm and hand sort of are interchangeable. Okay. So I think some things were lost in translation. My point is there are several different things that in isolation may not be any big deal and may, in fact, be explainable. But you have a combination of these things. So the standard is that we're supposed to look to see whether the evidence compels reversing the law judge. So why in this case does it rise to that higher standard of compelling the conclusion that the law judge was wrong? Well, Your Honor, I believe that the petitioners were credible on a number of issues. The incident in which the town Taiba, which is a Christian village in the West Bank, was burned in 2005, that did happen. There's documentary evidence to show that that, in fact, did happen. The fact that a young man who was a resident of Taiba was beaten and his pregnant wife murdered, that did happen. Because of the fact that he was a Christian and the woman was Muslim. Are there country reports on these problems from the State Department in the occupied territories about the difficulties between Christians and Muslims in the occupied, even though they may be Arabic, as in this case? Anything in the country reports about that? For that particular year, it did not. However, I will point out that, I mean, you can turn on the news every day and see what's going on. Let me just ask you one or two questions, if I may. What is the current status of the deferred action based upon being parents of Americans now? Do you know? Ms. Dowd was kind enough to give me your questions. I did not receive those before this morning, but I will answer that question to the best of my ability. Yes, Nancy Maroof and Syed Maroof would be eligible for DAPA because they've been here since 2010 and they have children who are U.S. citizens. They have at least one child who is a U.S. citizen. Eligible for it, but apparently, why are they being deported then? Well, if I may answer that question, they are stateless, so the U.S. government really cannot deport them unless they can find a country to deport them to. They are not citizens of Jordan. But that doesn't have anything to do with the parent problem, does it? The parents are both. I know they're stateless and we don't know whether anybody will take them. Right. But what is the relationship between that and the parent of Americans? Well, they do have one child who was born in the U.S. subsequent to Nancy. You've got two children, I thought. Yeah, two children subsequent to Nancy and Syed coming to the United States. So they're eligible for deferred action, but they're not receiving it, is that right? They haven't applied for it. So they haven't applied for it, but even if they had, that would be discretionary on the part of the government, would it not? I would have to investigate that further. So you don't know? I don't know. But you suspect that even if they had applied, and regardless of whether it's discretionary, the real reason that they're not being deported is nobody will take them. That's correct. But that doesn't affect whether our decision here on the IJ, right? The adverse credibility determination. Right. Well, the asylum claim is completely separate. It's completely separate. And the government is seeking to deport them, right? That's what we're here about. And we're not here about anything else, are we? The intention of the government is that Jordan was the alternative, and Jordan is not the alternative. They are not citizens of Jordan. They cannot go to Jordan. Isn't that a decision that has to be made after the fact, that is after it's final that they're being deported, then the government, I mean, they may stay here forever because nobody will take them, but the Department of Justice and the immigration authorities have got to see about that, and that's handled after the fact, right? Correct. Okay. I had one other question I should have asked you earlier. This is my error. Are we reviewing the BIA order here or the IJ order? Both. Well, the reason I'm asking is the BIA order seems to only address that portion of the IJ order dealing with this Muslim attack. But it said it was in part. I mean, it was an instance. But it doesn't say that the BIA is adopting the other credibility determinations of the IJ, I don't think, does it? I believe it does. I have to go back and look at the exact language. All right. So if the BIA adopts the other reasons, then we would look through the BIA and look at the IJ. But if it doesn't, we would look only at the BIA order, which is limited to that one issue. Right. But I believe it. So then if we find that that credibility decision is not right, then we'd have to remand it back to have them address the other bases of the IJ for the adverse credibility decision, right? Correct. Okay. Thank you. Thank you, Your Honor. Good morning. May it please the Court, Jamie Dowd on behalf of the Respondent Attorney General. I'd like to start by addressing the issue that was raised for the first time this morning before the Court with regard to the improperly translated document. There's no record evidence that the document was improperly translated. As the Court pointed out, the translation was provided by the petitioners during their hearing. And it was never objected to below. It was never objected to before the Board. And therefore, it would be improper for this Court to consider the argument. The testimony of the two people before the immigration law judge there about the beating and so on, and then what you had was a letter that was somewhat in conflict with that from the mother about the accident. Why is it that it's hard for me to understand why the immigration judge thought the testimony was false, just because there is a slight or some maybe more than slight, I don't know, discrepancy about it being an accident? Well, as the Court pointed out, there were several bases for the immigration judge's decision. One was that the letter conflicted with the statements made by both Mr. and Mrs. Maroof that Mr. Maroof's nose was broken in a beating, and the letter from his mother indicated that it was broken in an accident. So that was only— I didn't say it wasn't. A beating can also, in broad categories, people don't speak English too well, be thought of as an accident, I suppose. But I'm just—the immigration judge just didn't believe anything they said, apparently. It was very clear that there was considerable amount of feeling on the part of the immigration law judge that they were lying about everything. That's correct, Your Honor. And yet there are only a couple of discrepancies here. I just wonder—he was just sitting there looking at them and just didn't believe them, I take it, right? Well, yes. The immigration judge, based on the totality of the evidence that was presented to him, found that the petitioners were not— But there were only a couple of discrepancies, two or three discrepancies, after a lot of testimony here by these people. Yes, Your Honor. And as the court pointed out, the board zeroed in on the broken nose incident in its decision and cited the discrepancies provided by the immigration judge with regard to the dates of the broken nose and the surgery, with regard to the number of assailants that was given by Mr. Maroof and Mrs. Maroof, the conflicting testimony there, and also the conflicting testimony regarding— What other indication is there? This is a finding that they're just lying, falsifying, not that there's a mistake. They're being found to be just not credible. That's correct, Your Honor. I'm trying to find out why. If we look at the second page of the BIA order, it's very clear. It says inconsistencies in the number of people, what happened to the cousin, the date that this happened, and the business about the mother's letter saying it was an accident. So there's no mystery about how many— It's all about this one thing, about this, quote, accident or beating. About the broken nose. The whole thing. Yeah, did it happen because he was beaten by Muslims or did he make it up? Correct. But that requires us, does it not, to decide, to figure out what is it that we're reviewing here? Because the BIA order seems to only address this question of the Muslim attack, not the other reasons in the order of the immigration judge. Yes. So we're not looking through to the BIA order to the other things in the IJ order, I don't think, are we? No, Your Honor, because the board did not adopt the immigration judge's decision and only cited the broken nose incident and the evidence. So it's only a question of whether the evidence compels a different conclusion on credibility as to the Muslim attack. Correct. Yes, the broken nose incident, correct. So just the incidents pulled from the IJ's decision by the board with regard to the broken nose is what the court would review here, notwithstanding that the immigration judge cited a litany of other problems. So do you agree with Ms. Bartham that if we find that that's not sufficient, then we send it back and the BIA has to look at the other things that the IJ relied upon? Yes, Your Honor. If the court finds that that evidence does not or that that evidence compels a conclusion that the petitioners were credible, then the board would have to look back at the other evidence cited by the immigration judge and make a ruling on that. They'd be in the country two or three more years, I guess, by the time they get around. I understand there are big delays there. There are some delays, although they're doing their best, too, and they are getting more staff, so they're doing their best to get. What about this problem of the deferred action policy and what's being done about that in the Immigration Service? I understood that there was a policy, if you have American children born to the parents who are foreigners, that there's a deferral there of prosecution or deportation, and that's correct, isn't it? There was a program, which has now been— Now, is this because this Texas judge enjoined it and so it's no longer being applied? Correct, Your Honor, but it's my understanding that while the policy was in place, these petitioners did not apply for any sort of DAPA or DACA relief during the months that the program was in place before the injunction was issued. What is the procedural problem there that even though you know that the facts are as they are about the children, you have to file a formal document under—what is the procedure? Yes, sir, they would have had to apply, so there's an application process that they would have had to have gone through and filed an affirmative application in order to be considered for the program. And the reason they didn't apply is they just didn't apply. Yes, I can't speak to that, Your Honor. There's no explanation for it. There's no— Ineffective assistance of counsel. Well, there's no ineffective assistance of counsel claim has been made before this court, so— Nobody's making any claims about the procedural problems. Yes, so I can't speak to whether they did have ineffective assistance, but it appears that they never applied for the program while it was standing, which was for about five months that it was in place, and it appears they never applied, so I can't speak. And then the deportation problem, where they're stateless, where they may be accepted, is an after-the-fact problem after the rulings of the court and so on are final, right? That's correct, Your Honor, and that's— And I wanted to speak to this because I know the court had some questions. Right now, we don't have any evidence that there's a problem removing these people. Because there's a stay in place, no steps have been taken to try to remove them, so we don't have any evidence right now that they will not be able to be removed. Once— But you—the policy apparently is that Israel won't take them, either in Israel proper or in the occupied territories, and there's some reason to think the Jordanians may not take them, either, right? Right, and we don't know, and we won't know until— We should forget that problem. That will come up later. Exactly, and that doesn't have any bearing on the court's decision here with regard to the petition for review and the adverse credibility finding. And if the court denies the petition for review and the stay is lifted once the mandate issues, then the government is prepared and willing to take steps to try to remove these individuals, including requesting documents from the removal countries, requesting permission to remove— You really need a lawyer, don't they? Well, yeah, and I'm not sure, you know, if and when they may want to apply for any sort of— I mean, the court had asked about several things, so I did want to address that there are a couple different things. I mean, there is an administrative stay of removal that they could apply for with ICE field office director, which also has nothing to do with these proceedings, but could be done notwithstanding if this court were to deny the petition for review and there were a final order of removal, they could apply for that if they were interested. So there are some other things they could do, which aren't related to this proceeding, but that are out there. So, you know, if the court has an interest in knowing about that, there are some other things that they could do after these proceedings conclude. But we won't know. And the Department of Homeland Security has been able to remove individuals to both Israel and Jordan, so the government is able to remove individuals, whether these individuals will be removed and how— I thought Israel had a policy against accepting any Arabs and any Palestinians, which is what these people are apparently, in Israel. That may not be—maybe I'm wrong about that. I thought— Yeah, and I don't know how successful they were— I read that in the newspaper. —with these individuals. Yeah, so I can't speak to that, but we are able to remove individuals to Israel and to Jordan. So there is the availability there for that to happen. I did want to speak just briefly to just kind of piggyback on what Judge McKee had said, that there were several things that the immigration judge cited with regard to the Broken Nose incident. So it wasn't just the letter. It wasn't just the dates, but it was the dates, the letter, the number of assailants, the position of the injury to the cousin, whether it was the arm, shoulder, hand. So while the court is just reviewing the Broken Nose incident that was cited by the board, there was a litany of things that the board pointed to to support that. Do you think what we ought to do is send this back to the board then and ask them to explain the other problems in the case, that they don't address the problems in addition to the nose problem? No, Your Honor. The government contends that the petition for review should be denied because substantial evidence does support the board's decision here. And I think it bears pointing out that this case, that the hearings here were held over several different dates. And at several points in the proceedings, the immigration judge expressed to petitioners his concern about their credibility and said, bring me evidence about this, bring me evidence about this. And they went back and forth, and they were able to come back to court several times, having been put on notice. I mean, if you read the transcript, it's like they're damned if they do, they're damned if they don't. He found fault with every single thing they did, even things that seemed entirely innocent. So he says, can you get this stuff? And they explain why they don't think they can. And he thinks they should go get it. So they go get it, and then he says, and you said you couldn't get it. Or he asked the husband, why are these dates different? And he says, I don't know, I mean, it could be a translation error, it could have misspoken. And he gets down on him for the fact that he can't say definitively why it has that date. I mean, it was weird. Well, and to go to that point, at one point Mr. Maroof had cited confusion for the error in dates, and then at another point he said it was a translator error. So those are very different explanations. Yes, but if you read it, it's because he was browbeaten into taking a position that he didn't say 2007. I mean, it's a very understandable progression when you read the examination and what led up to it. Well, and the burden was on the petitioners at all points to make up their claim, and they were given opportunities on many occasions to bolster their claim, and then they brought in evidence towards the end. They clearly didn't know what to do. They don't speak the language very well. They supposedly got a lawyer who's representing them. But whatever the lawyer did seems very ineffective, doesn't it? It doesn't raise anything. I mean, you know, these people need a lawyer. Well, and they were represented below, and I can't speak to the effectiveness of their representation. And, you know, if they have concerns about that, that would be, you know, a separate proceeding if they wanted to file some sort of claim about that. But that wouldn't be on this record unless the court has further questions. Thank you very much. Thank you. Mr. Tim. Counsel, may I say to you these people need a lawyer? Yeah, I do. Do you grasp that? Oh, yeah, absolutely. And it's your firm in San Francisco. They're in Minnesota. You haven't talked to them. No, my, I, I. I mean, what kind of representation can you now give them? I don't know what their choices are, but obviously at least in the face of this record, this is a sad situation. We are in regular touch. My office is in regular touch with them. I myself haven't spoken to them because I was asked to do the oral argument about 10 days ago. So I had to go through all the record. Well, your senior partner didn't want to come. I'm not sure about that. He had another court. oral argument, and then when we granted oral argument, he decided he wanted to waive oral argument. I mean, these people have not gotten any kind of representation based on what I can see that's worth anything. Well, if I could address the immigration judge's handling of the word accident throughout his argument. He said that basically that the mother's letter and the word accident completely torpedoed everything in the record. And it was the icing on the cake. But what do you expect us to do about that? I mean, when did you discover that it was a mistranslation? Last week. So we can't do anything about that. I realize that. I realize that. I mean, you can file a motion there. I mean, there are all sorts of things you can do. We sooespontly decide that there's been ineffective assistance of counsel in this case. I am not aware of that. Well, there's a well-established case law about that under Lozado, none of which your client has filed. That doesn't go to the question of whether we can ignore all that. Right. No, that's true. That's true. It's another case in which, and we see them frequently in all different kinds of cases where the lawyers just don't do the job they're getting paid to do. Let me make this suggestion, and I'm not speaking for the court because I have not obviously spoken with my colleagues, but we do on occasion have cases that are presented to us where the lawyers, including the government lawyer, agree that something gets remanded back to the BIA. And if there really is legitimate evidence that there's a translation problem, it seems to me you might want to consider talking to your colleagues and agreeing to a remand back, independent of what we do. You do that before we act, then it goes back. But it seems to me for you to consider that, you've got to show her what you have that says, excuse me, that says, that I would think unequivocally establishes there's a translation error. Will at least you two talk and let us know forthwith if the government agrees to send it back to the BIA to reconsider based on this alleged translation problem. The government's position would be that the appropriate remedy would be to file a motion to remove it from the court. It would not be a part of these proceedings. You don't have any authority? Your Honor, no. I wouldn't have any authority to remand for that purpose. You could stipulate. The way it comes in is there's a motion to remand and the government agrees. And my assumption, correct, perhaps incorrect, is that that comes about because there have been discussions in advance. And the government agrees that, all right, if you file that motion based on what you showed me, then we won't oppose the motion and then it goes back. I don't know that for a fact, but I'm guessing that's the way it works in practice. Am I wrong? If there was an error, however, that error could be brought up in a motion to reopen for the board. All I'm asking you is to talk to her about the procedure, please. And the government is more than willing to talk about it. But I'm just, to be completely honest, my inclination would be that the government would not agree. So remand for that purpose. We need to order you. We need to put out an order that tells you to do something, if anything. Well, another conversation that you could have is us holding this decision, whatever it may be, until such time as she files her motion, you decide whether you're going to acquiesce in it or not, and the BIA decides it. Just put this aside until that takes place. That's a possibility, theoretically, right? Theoretically, you're right. So let us know whether that's something that you might agree to, all right? Is that something affirmatively you want us to follow, or would you issue an order of what you would like to do? Well, you're both here today. She's going back to San Francisco sometime. So it would be better if you're going to talk to do it now and let us know. How about by the end of the week, you tell us whether you would be willing to have us put this case on hold until such time as she files that motion, you have a chance to examine it, and you have a chance to determine whether you're going to acquiesce in the motion. If she doesn't file it, then you'd come back. And if she's going to file it, she's got to file it within 10 days. So we've got to have some parameters here, okay? The motion being the motion we have before the court. Right, yes. So you think about whether and let us know by the end of the week whether you would acquiesce in us staying this case, just putting the case on hold, until she files it, provided within 10 days. At that point, you have an opportunity to determine whether you agree with it, in which case, obviously, then we keep it on hold. And if you disagree with the motion, then you'd have a chance to tell us that you disagree. You're not going to acquiesce in that. You're going to oppose it, and you want us to decide the case. Does that make sense? And I can agree to that right now. Under those parameters, we'll agree to hold the case for the 10 days to give her the opportunity to file the motion if she chooses to. Hey, we're making progress here. Can you do that within 10 days? Absolutely. All right, take your best shot. But with the stipulation that, you know, once we see the motion, we may advise the court that we want to go forward with the case. You've only agreed that we hold this case until such time as she files the motion, provided it's within 10 days, and then you have a chance to look at it and tell us whether you're willing to agree to stipulate to the motion to send it back. And if so, we continue to hold it, and if not, then we'll go ahead and decide the case. Work for you? Oh, absolutely. Work for you? Yes. Work for you? My understanding is that this motion is not going to simply have the allegation that there's a mistake. It's going to be supported by a qualified translator. Proof, whatever it is. Right. I have a qualified translator. Not just an assertion? Right. Work for you? My husband's a linguist at Stanford. That's fine. Does the fact that this, at least in my opinion, based on what I see in this record, there's been ineffective assistance of counsel make a difference? No. The government would contend that if it's not, that could also be alleged in a motion to be held before the board, and there are certain standards and judgments we've put out that would have to be met with regards to this item before that was considered. I'm only trying to cut a deal here with respect to the translation here. You want to try to cut a deal with her in connection with Lozado and ineffective assistance? As far as I'm concerned, that's up to you. I'm very happy to go ahead and do a motion to reopen on the translation error, and I can provide you with a copy of the correct translation. Which will be filed along with the motion. To this court or to the BIA? To the BIA. BIA. Yeah. All right. Thank you. Good luck.